UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| KIMBERLY LOWRY, on behalf of herself and the proposed Rule 23 classes, | Case No. 21-CV-2189 (PJS/TNL) |
| Plaintiff, | |
| v. | ORDER |
| CITY OF MINNEAPOLIS, a municipal corporation; MINNEAPOLIS PUBLIC HOUSING AUTHORITY, in and for the City of Minneapolis, a body corporate and politic; and COMMUNITY HOUSING RESOURCES, a nonprofit corporation, | |
| Defendants. | |

---

Anna P. Prakash and Nicole Schladt, NICHOLS KASTER, PLLP; John R. Shoemaker and Paul F. Shoemaker, SHOEMAKER & SHOEMAKER, P.L.L.C.; Lawrence McDonough, LARRY McDONOUGH, ESQ., for plaintiff and the putative classes.

Tracey N. Fussy and Sharda Enslin, MINNEAPOLIS CITY ATTORNEY'S OFFICE, for defendant City of Minneapolis.

Suzanne L. Jones, Benjamin R. Kinney, and Anthony B. Corleto, GORDON REES SCULLY MANSUKHANI LLP; Kenneth H. Bayliss, QUINLIVAN & HUGHES, P.A., for defendants Minneapolis Public Housing Authority and Community Housing Resources.

After allegedly enduring substandard living conditions in Minneapolis public housing, plaintiff Kimberly Lowry brought this putative class action in Minnesota state court against defendants Minneapolis Public Housing Authority and Community

Housing Resources (collectively, "the Authority")[1] and against defendant City of Minneapolis (the "City").

The Authority removed the action to this Court. Although each of Lowry's causes of action arises under state law, the Authority nevertheless contends that this Court has federal-question jurisdiction because Lowry's claims necessarily raise a substantial issue of federal law: specifically, whether a federally funded public-housing authority must comply with local rental-licensing requirements.

This matter is before the Court on Lowry's motion to remand to state court. For the reasons that follow, the Court finds that it does not have subject-matter jurisdiction and grants Lowry's motion.

## I. BACKGROUND

### A. Lowry's Allegations

The Authority is the largest public-housing authority in Minnesota, owning or managing over 6,000 residential units (predominantly in Minneapolis) and providing housing to about 10,500 residents. ECF No. 1-1 ¶¶ 16–19. Most of the Authority's

---

[1] Lowry alleges that Community Housing Resources is "100% controlled" by the Minneapolis Public Housing Authority. ECF No. 1-1 ¶ 33. The two entities admit that allegation, ECF No. 1-2 at 2 ¶ 2, and are represented by the same attorneys. (Page numbers in record citations refer to the pagination in the computer-generated banner superimposed on items docketed in ECF, not any document's internal pagination.) The Court therefore treats the two entities collectively.

funding comes from the United States Department of Housing and Urban Development ("HUD").  *Id.* ¶ 24.

Lowry alleges that the Authority's housing is subject to a number of federal, state, and local requirements.  Federal regulations require the housing to be "decent, safe, sanitary and in good repair."  24 C.F.R. § 5.703; *see also* ECF No. 1-1 ¶ 25.  Those same regulations expressly "do not supersede or preempt State and local codes for building and maintenance with which HUD housing must comply"; rather, "HUD housing must continue to adhere to these codes."  24 C.F.R. § 5.703(g); *see also* ECF No. 1-1 ¶ 26.  Further, under Minnesota law, an Authority project is "subject to the planning, zoning, sanitary, and building laws, ordinances, and regulations applicable to the locality in which the project is situated."  Minn. Stat. § 469.012, subdiv. 4; *see also* ECF No. 1-1 ¶ 27.  And the Housing Maintenance Code (the "HMC"), which is part of the Minneapolis Code of Ordinances,[2] imposes multiple safety and maintenance standards on dwellings located in Minneapolis.  *See, e.g.*, HMC arts. IV, V, VI, VIII, IX.

The HMC also imposes licensing and inspection requirements on rental properties.  The owner of a rental property (with some exceptions not relevant here) must obtain a license for the property before renting it.  HMC art. XVI,

---

[2] Minneapolis, Minn., Code of Ordinances tit. 12, ch. 244 (2022).  The HMC is available online at https://library.municode.com/mn/minneapolis/codes/code_of_ordinances?nodeId=COOR_TIT12HO_CH244MACO (last visited July 15, 2022).

§§ 244.1810–.1820.  A rental-license holder must pay an annual licensing fee.  *Id.* § 244.1880.  And a City inspector must inspect a rental property before that property may be licensed.  *Id.* § 244.1900; *see also* ECF No. 1-1 ¶ 56 (citing *Marable v. City of Minneapolis*, No. A19-1558, 2020 WL 2312940, at *5 (Minn. Ct. App. May 11, 2020), for the proposition that the City may not delegate its inspection authority).

Lowry has been a tenant in the same Authority property for over a decade.  *See* ECF No. 1-1 ¶ 66.  She pays monthly rent to the Authority and complies with her other obligations.  *Id.* ¶¶ 67, 74.  The Authority made several promises in her lease about the quality of her living space, including that the Authority would "[c]omply with applicable building codes, housing codes and HUD regulations materially affecting health and safety" and "[m]aintain in good and safe working condition all electrical, plumbing, heating, ventilation, sanitary and other facilities, appliances and elevators supplied or required to be supplied by [the Authority]."  *Id.* ¶ 71.

According to Lowry, the Authority has not lived up to its promises.  "[T]hrough no fault of her family or of her own," Lowry alleges, her unit has "[d]amaged and loose vinyl asbestos floor tile," a washing machine "installed in front of the electrical service box," "[p]eeling paint," and a basement that "has flooded multiple times."  *Id.* ¶¶ 76, 80.  Lowry has reported these problems to the Authority, but the Authority has "been slow" to repair her unit, "if at all."  *Id.* ¶¶ 78–79.

Lowry also sought help from the City's 311 System, through which "tenants in the City can contact the City to submit housing condition complaints and request the City conduct inspections." *Id.* ¶¶ 62, 85. But City officials told Lowry that, because she lived in Authority housing, the City could not help. *Id.* ¶ 85. What is more, Lowry alleges, the City permits the Authority to operate its rental units without obtaining licenses or undergoing City inspections, even though the City enforces those requirements for other, privately owned rental properties. *Id.* ¶ 57.

### B. Lowry's Causes of Action

Lowry's complaint asserts six counts: one against the City, three against the Authority, and two against both.

Against the City: Count I alleges that the City has violated the Minnesota Human Rights Act by discriminating against recipients of public assistance—namely, by not providing licensing and inspection services to public-housing tenants despite providing such services to tenants in privately owned properties. Count III seeks an order under HMC art. I, § 244.80, compelling the City to enforce the HMC with respect to the Authority's properties. And Count VI alleges that the City violated the Minnesota Deceptive Trade Practices Act by "creat[ing] confusion or misunderstanding" over what services the City's 311 System would provide to public-housing tenants.

Against the Authority: Count II alleges that the Authority has breached its lease obligations by not maintaining its units and not complying with applicable housing laws. Count III seeks an order under HMC art. I, § 244.80, compelling the Authority to comply with the HMC. Count IV alleges that the Authority has breached the covenant of habitability (incorporated into all residential leases by virtue of a Minnesota statute) by failing to comply with the HMC. Count V alleges that the Authority has violated the Minnesota Consumer Fraud Act by operating unlicensed rental properties, by falsely representing that it would comply with applicable housing laws, and by falsely representing that it would maintain its units in decent, safe, and sanitary condition. Finally, Count VI alleges that the Authority has violated the Minnesota Deceptive Trade Practices Act, essentially for the reasons given in Count V.

## C. Procedural History

Lowry brought this action in state court, naming as putative classes several groups of the Authority's tenants. *Id.* ¶ 90. After the Authority and the City filed their answers, the Authority removed the action to federal court under 28 U.S.C. §§ 1441(a), 1453(b), and 1446. ECF No. 1 at 1.

The Authority argues that this Court has federal-question jurisdiction under 28 U.S.C. § 1331. *Id.* Specifically, the Authority contends that Lowry's complaint necessarily raises a federal issue—that issue being whether 24 C.F.R. § 5.703(g) (the

federal regulation requiring public-housing authorities to comply with state and local building and maintenance codes) requires the Authority to purchase rental licenses in accordance with the HMC. ECF No. 12 at 17, 19, 20. Lowry argues that this Court does not have subject-matter jurisdiction and moves to remand her case to state court. ECF No. 5; ECF No. 7 at 1.

## II. ANALYSIS

### A. Legal Standard

Federal courts have limited subject-matter jurisdiction, with "only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction" over a case that originated in state court, "the case shall be remanded." 28 U.S.C. § 1447(c). The only source of subject-matter jurisdiction that the Authority invokes in this case is federal-question jurisdiction under 28 U.S.C. § 1331.[3]

Ordinarily, whether federal-question jurisdiction exists is determined by applying the well-pleaded-complaint rule, which "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly

---

[3] In the "wherefore" clause of its notice of removal, the Authority cites 28 U.S.C. § 1332, the diversity-jurisdiction statute. ECF No. 1 at 4. That appears to be a typo. The Authority does not mention diversity jurisdiction elsewhere in its notice of removal or in its brief.

pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  In other words, for federal-question jurisdiction to exist, the complaint must, on its face, establish that "federal law creates the cause of action."  *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC*, 843 F.3d 325, 329 (8th Cir. 2016) (quoting *Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir. 1998)).  Alternatively, federal-question jurisdiction may exist if "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Id.* (quoting *Ragnone*, 147 F.3d at 702); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).  But if no claim in the complaint presents a federal question, then a federal defense—including the defense of preemption—does not suffice to establish federal-question jurisdiction, "even if the defense is anticipated in the plaintiff's complaint."  *Caterpillar*, 482 U.S. at 393.[4]

---

[4]This rule has an exception: cases involving a federal statute that "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character."  *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987); *see also Conrad v. Xcel Energy, Inc.*, No. 12-CV-2819 (PJS/FLN), 2013 WL 1395877, at *2 (D. Minn. Apr. 5, 2013).  The Authority has not argued that this exception applies here, so the Court will not discuss it.

B. *The Authority's Asserted Federal Issue*

The Authority argues that this Court has federal-question jurisdiction over Lowry's complaint for two reasons. First, the Authority argues that Lowry must prove, as an element of her claims, that a federal statute or regulation requires the Authority to comply with Minneapolis's rental-licensing scheme. Second, the Authority argues that, even if Lowry is not required to prove the existence of such a statute or regulation, Lowry's claims nevertheless require the Court to resolve a substantial question of federal law. The Court will address the arguments in turn.

1. The Authority Identifies a Preemption Defense, Not a Claim Element

The Authority's first argument relies on *United States v. City of St. Paul*, in which the Eighth Circuit held that applying St. Paul's nuisance-abatement code to federal public housing would "impermissibly interfere[] with the operation of the National Housing Act." 258 F.3d 750, 752 (8th Cir. 2001). In reaching its conclusion, the Eighth Circuit explained that "the activities of federal installations are shielded by the Supremacy Clause from direct state regulation unless Congress provides 'clear and unambiguous' authorization for such regulation." *Id.* (quoting *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180 (1988)). According to the Authority, *City of St. Paul* establishes that local ordinances cannot be enforced against federally funded public-housing

authorities unless a federal statute so authorizes.[5] As a result, the Authority argues, Lowry must prove—as part of her case-in-chief—that a federal statute explicitly authorizes the enforcement of Minneapolis's rental-license regulations against the Authority.

The Authority's premises are flawed. First, *City of St. Paul* was addressing a *defense*—the defense of preemption—not the elements of a claim. In that case, there was no dispute that, on its face, the municipal code applied to HUD housing. The issue was whether the code was preempted by federal law. A plaintiff does not have the burden of proving that her state-law claim was *not* preempted; instead, "it is the [defendant's] burden to establish preemption of [the plaintiff's] claim." *Williams v. Nat'l Football League*, 582 F.3d 863, 880 (8th Cir. 2009); *see also Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019) ("Preemption . . . is an affirmative defense upon which the defendants bear the burden of proof." (quotation marks omitted)); *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 230 (3d Cir. 2001) ("[T]he party claiming preemption bears the burden of demonstrating that federal law preempts state law.").

---

[5]There is a potentially significant difference between *City of St. Paul* and this case. In *City of St. Paul*, the local regulations were being applied against housing that was owned and operated by HUD itself; it was *federal* housing. 258 F.3d at 751. Here, by contrast, Lowry is attempting to enforce local regulations against housing owned and operated by the Authority; it is *state* housing, albeit state housing that is subsidized by federal funds. The Court will assume, but only for the sake of argument, that *City of St. Paul* applies to federally subsidized housing to the same extent that it applies to federally owned and operated housing.

Second, even if the Authority were correct that Lowry bears the burden of proving that her claim is not preempted by federal law, what matters is not who bears the burden of proof on a single "federal element," *see Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006), but whether federal law creates the right to relief, *Great Lakes Gas*, 843 F.3d at 329. Here, Lowry's claims all stem from state and local laws; federal law is implicated only as a possible defense to liability that would otherwise exist under state and local law. Put differently, federal law provides a potential shield to the Authority, not a potential sword to Lowry.

At bottom, the Authority has raised a classic preemption defense, and the Supreme Court has been clear that a defendant does not create federal-question jurisdiction by raising a preemption defense to a state-law claim. *Caterpillar*, 482 U.S. at 393. In *Caterpillar*, the plaintiff employees "filed an action based solely on state law in California state court, contending that Caterpillar 'breached [its] employment agreement'" with the plaintiffs. *Id.* at 390 (alteration in original) (quoting state-court complaint). Caterpillar removed the case to federal court, arguing that the plaintiffs' individual employment contracts "were, as a matter of federal substantive labor law, merged into and superseded by" collective-bargaining agreements, whose interpretation was governed by federal law. *See id.* (quoting petition for removal). But the Supreme Court held that the employees' complaint contained no federal issue;

-11-

rather, Caterpillar was "merely . . . injecting a federal question into an action that asserts what is plainly a state-law claim." *Id.* at 399.

The Authority's argument here is analogous to Caterpillar's. Lowry filed a state-court action based solely on state and local laws, contending that the defendants broke those laws and breached their contracts. The Authority removed the case to federal court on the ground that, under the Supremacy Clause, the state and local laws were preempted by federal law. It was the Authority, not Lowry, who injected a federal question into this action.

2. Lowry's Complaint Does Not Necessarily Raise a Federal Issue

The Authority's second argument—an appeal to the *Grable* line of cases—is similarly unavailing. In *Grable,* the Supreme Court acknowledged that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable*, 545 U.S. at 312. The Supreme Court has not clearly demarcated the boundaries of this category of cases, but the Court has emphasized that the category is "special and small" and "slim." *Empire HealthChoice*, 547 U.S. at 699, 701.

To invoke federal-question jurisdiction under *Grable*, a party must first identify an issue of federal law that is necessary to the resolution of the case; it must be impossible for the plaintiff to recover relief without the court resolving that issue. *Grable*, 545 U.S. at 314. Here, the Authority argues that Lowry will not be able to

recover relief without this Court determining "whether 24 C.F.R. § 5.703(g) . . . obligate[s] [the Authority] to purchase rental dwelling licenses under the [HMC]."  ECF No. 12 at 19.

The Authority is mistaken.  Broadly speaking, each count in Lowry's complaint alleges that a defendant should be held liable because the defendant did not do a bunch of things that it was required to do under state and local law.  The Authority's failure to obtain rental licenses is one of those things, but it is never the only thing.  Hence, Lowry can obtain relief on every count even if she cannot prove that the Authority was required to obtain rental licenses.  She can do so by proving (a) that the City discriminated on the basis of public-assistance status in its inspection practices (Count I); (b) that the Authority did not comply with numerous provisions of the HMC regarding the maintenance of rental housing (Counts II–VI); (c) that the City failed to enforce those maintenance provisions of the HMC (Count III); and (d) that the City's conduct created confusion or misunderstanding about its 311 System (Count VI).

In short, this Court can grant relief to Lowry on every count in her complaint without deciding whether federal law preempts the HMC's requirement that the Authority obtain rental licenses for its properties.  This case therefore does not fall within the "small" category of cases described by *Grable*.

*     *     *     *     *

The licensing issue cited by the Authority is a preemption defense, not an element of a claim, and the issue does not meet the strict requirements for triggering federal-question jurisdiction under *Grable*. Thus, the Court does not have subject-matter jurisdiction, and this case must be remanded to state court.[6]

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT plaintiff's motion to remand [ECF No. 5] is GRANTED. This action is REMANDED to the District Court for the Fourth Judicial District, County of Hennepin, State of Minnesota.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 15, 2022                                s/Patrick J. Schiltz
                                                    Patrick J. Schiltz, Chief Judge
                                                    United States District Court

---

[6]Lowry requests attorney's fees, which the Court may award under 28 U.S.C. § 1447(c) (authorizing, upon remand, an award of "just costs and any actual expenses, including attorney fees, incurred as a result of the removal"). But given the complexity of the law at issue here, the Court cannot say that the Authority's basis for removal was objectively unreasonable. The Court therefore declines to award fees.